AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Northern District of Texas

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

FEB - 5 2019

CLERK, U.S. DISTRICT COURT
By
CLERK, U.S. DISTRICT COURT
By _564_ Deputy

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 4:18-MJ-____564____ |
| Four Individual Premises As Further Described in Affidavit and Attachment A | ) ) ) |

Redacted

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Northern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud. |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Loi H. Cao, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **9/17/18**

_____
*Judge's signature*

City and state: Fort Worth, Texas

Jeffrey L. Cureton, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF TEXAS
### NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:     ) | Case No. |
| ) | |
| **1132 GLADE ROAD** ) | |
| **COLLEYVILLE, TEXAS, 76034;** ) | <u>**UNDER SEAL**</u> |
| ) | |
| **1601 W. AIRPORT FREEWAY, 2nd Floor** ) | |
| **EULESS, TEXAS, 76040;** ) | |
| ) | |
| **9151 BOULEVARD 26** ) | |
| **Suites 100B, 101B, 150B and 175B** ) | |
| **NORTH RICHLAND HILLS, TEXAS, 76180; and** ) | |
| ) | |
| **2801 PARAMOUNT BLVD.** ) | |
| **AMARILLO, TEXAS, 79109** ) | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## <u>FOR A SEARCH WARRANT</u>

I, Loi H. Cao, being first duly sworn, hereby depose and state as follows:

### <u>INTRODUCTION</u>

I make this affidavit in support of an application for search warrants for the above-captioned locations, hereinafter the "Subject Locations," which are more fully described in Attachment A. For the reasons set forth herein, your affiant submits that there is probable cause to believe that the Subject Locations contain evidence, fruits, and instrumentalities, more fully described in Attachment B, regarding the following criminal violations: conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; identity theft, in violation of 18 U.S.C. § 1028A;

and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

As explained below, all four of the Subject Locations are associated with a wide-ranging Ponzi scheme based in Texas and Maryland that is being executed by Jay B. LEDFORD, Kevin MERRILL and others. The Subject Locations identified below are used to facilitate and store records related to the fraudulent sale of investments in monetized accounts receivable:

1.    1132 Glade Road, Colleyville, Texas, 76034 ("**Glade Road**")

2.    1601 W. Airport Freeway, 2nd Floor, Euless, Texas, 76040 ("**Airport Freeway**").

3.    9151 Boulevard 26, Suites 100B, 101B, 150B, and 175B, North Richland Hills, Texas, 76180 ("**Boulevard 26**")

4.    2801 Paramount Boulevard, Amarillo, Texas, 79109 ("**Paramount Boulevard**.")

## EXPERTISE

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed with the FBI since October 2008. From November 2014 until the present, I have been assigned to investigate violations of federal law involving a range of white-collar criminal violations. I have completed several computer internet fraud in-service training courses. During these courses, I received training concerning the use of computers, IP addresses, and email servers, among other things. I am also a Certified Public Accountant and have been trained in the use of numerous financial computer systems and databases. Over the course of several investigations, I have consulted with other cyber professionals in the law enforcement field regarding the evidentiary value of

computers, storage devices, email and cell phones in conjunction with financial and criminal investigations.

2.      Through my training and experience, I have become familiar with the methods and techniques used by criminals to commit economic crimes, such as wire fraud, bank fraud, and how those criminals conceal and store information derived from such criminal activity.  In addition, I have been involved in other investigations involving the fraudulent sale of investment products, including monetized accounts receivable.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

1.      According to your affiant's review of publically available records, Jay B. LEDFORD is a resident of the state of Texas and a licensed Certified Public Accountant ("CPA") in that state.

2.      LEDFORD is the owner/operator of LEDFORD & ASSOCIATES, PLLC a public accounting firm with an office in Amarillo, Texas and Colleyville, Texas. LEDFORD is also the Director, CEO, or CFO of several other entities that include De Ville Asset Management Limited ("DE VILLE"), Riverwalk Financial Corporation ("RIVERWALK"), and Receivables Portfolio Interchange, Inc. ("RPI").   A review of Texas public records indicated that DE VILLE's Certificate of Formation was filed on September 28, 2012. Your affiant knows through review of personal and financial records that all four of the Subject Locations are owned/leased or operated by LEDFORD.

The commercial office building located at **1132 Glade Road, Colleyville, Texas, 76034** (hereinafter "**Glade Road**"), is where RIVERWALK, one of LEDFORD's companies, is headquartered. One of RIVERWALK's consumer debt collection centers is located at **1601 W. Airport Freeway, 2nd Floor, Euless, Texas, 76040.** (hereinafter "**Airport Freeway**"). A commercial office building at **9151 Boulevard 26, Suites 100B, 101B, 150B, and 175B, North Richland Hills, Texas, 76180** (hereinafter "**Boulevard 26**") is another consumer debt collection center for RIVERWALK, as well as the location of the DE VILLE company. The listed suite addresses are all owned and controlled by LEDFORD and associated with RIVERWALK and DE VILLE. The public accounting firm owned and controlled by LEDFORD, called LEDFORD & ASSOCIATES, PLLC, is located at **2801 Paramount Boulevard, Amarillo, Texas, 79109** (hereinafter "**Paramount Boulevard**."

    3.    Kevin MERRILL ("MERRILL") is a resident of the state of Maryland. MERRILL is the sole managing member and owner of GLOBAL CREDIT RECOVERY, LLC ("GCR") which was created under Maryland law in December 2011. MERRILL is also sole managing member of DELMARVA CAPITAL SERVICES, LLC ("DELMARVA") which was registered in the state of Maryland. MERRILL incorporated K.B. MERRILL ASSOCIATES, LLC in August 1999. In January 2009, MERRILL changed the name of K.B. MERRILL ASSOCIATES, LLC to DELMARVA. In August 2012, DELMARVA, was dissolved and is no longer in good standing with the state of Maryland. Although the company was dissolved in 2012, MERRILL continues to use the company name, and maintain bank accounts in the name of DELMARVA which

MERRILL uses to facilitate the fraudulent investment scheme. MERRILL also owns and operates RHINO CAPITAL SERVICES, LLC ("RHINO") which was incorporated in Maryland in 2013.

4.      Cameron JEZIERSKI ("JEZIERSKI") is a resident of the state of Texas and per JEZIERSKI's own LinkedIn account, is the Chief Operating Officer at RIVERWALK. Based on your affiant's review of public records, JEZIERSKI is also listed as the Director of three different companies registered in the state of Texas that include SCUSA Financial, Inc. ("SCUSA"), NLEX, Inc. ("NLEX"), and CRJ Holdings, LLC. ("CRJ").

5.      ████████████ is a resident of the state of Texas, the daughter of LEDFORD, and an employee of LEDFORD & ASSOCIATES, PLLC (the accounting firm). ████████████ is a CPA, registered in Texas per your affiant's review of publically available records. As part of this investigation, your affiant obtained records of CENTURION CAPITAL CORPORATION ("CENTURION"), a corporation registered in the state of Texas. Your affiant also obtained bank account records from a Bank of America account ending in 9683 for CENTURION. Account opening documents for that account showed that the account was opened on June 14, 2017, listed ████████████ as the Director of CENTURION, and the only authorized signer on that account.

6.      Your affiant is aware that Jay LEDFORD is using multiple companies to further his fraudulent investment scheme, to include, but not limited to, DE VILLE, RIVERWALK, SCUSA, NLEX, and CENTURION.

These companies act as conduits for the funds LEDFORD receives from investors and lenders, as well as funds LEDFORD receives from MERRILL and others.

7.     The ongoing federal investigation has uncovered probable cause to believe that in and around 2013, LEDFORD, MERRILL, JEZIERSKI and others engaged in a scheme to defraud investors and lenders by promising to use investor/lender funds to purchase portfolios of consumer debt. They represented that they would collect on the debt portfolios or sell the portfolios to third party buyers, pay the investors a significant profit or interest rate, and return the investors' principal. LEDFORD, in conjunction with MERRILL and JEZIERSKI, through his various companies and entities, obtains funds from investors (or investor lenders), places those funds into accounts that appear to be held in the name of already established legitimate businesses, and then uses those funds to pay back old investors or lenders in the scheme or diverts the funds for to his own personal use.

8.     Your affiant's investigation has revealed that LEDFORD failed to invest millions of dollars of investor and lender funds, that LEDFORD used investor or lender funds to pay other investors or lenders their principal or their purported returns, and that LEDFORD diverted significant amounts of investor or lender monies for personal gain to include personal credit card expenses, jewelry, cars and gambling expenses. Based on your affiant's training and experience, this pattern of conduct is indicative of a Ponzi scheme. The scheme to defraud is ongoing.

9.     Your affiant has learned that LEDFORD, MERRILL and JEZIERSKI are conspiring to commit wire fraud and are committing wire fraud to cheat investors; they purport:

a.    to invest in consumer credit portfolios and offer to potential investors opportunities to invest with them, when in fact, LEDFORD, MERRILL and JEZIERSKI have provided to investors and potential investors investment materials which have falsified the actual seller of the credit portfolio, the actual purchase price, the fact of MERRILL or LEDFORD's participation, and sometimes the entire transaction;

b.    to sell or "flip" the credit portfolios to independent, third party buyers for a profit, when in fact there are no sales to independent third party buyers, or to "collect" consumer debt payments on the portfolios, when in fact, LEDFORD, MERRILL and JEZIERSKI inflated or invented the collection reports they provided to investors;

c.    to pay profits to investors from successful "flips" or collections from consumer payments on the portfolios, when in fact, LEDFORD, MERRILL and JEZIERSKI used money from new investors to pay purported profits and/or collections to old investors or used re-investments or new investments from old investors to pay to the investors their purported profits and/or collections;

d.    to provide third party documentation to the investors of their actions, when in fact LEDFORD, MERRILL and JEZIERSKI created imposter companies and bank accounts, falsified bank wire transfer records, created false asset purchase overviews and agreements, and created false collection reports. These actions were all undertaken while LEDFORD, MERRILL and JEZIERSKI personally enriched themselves and concealed their diversion of investors' monies to purchase luxury automobiles, purchase and/or renovate high end houses in Maryland, Texas, Nevada, and Florida, buy watches and jewelry, acquire a share in a jet plane, and support a lavish lifestyle.

The Merrill Interview

10.     On October 26, 2017, MERRILL consented to an interview at the Federal Bureau of Investigation ("FBI") Baltimore Field Office. MERRILL had been contacted by an investor the FBI previously interviewed concerning MERRILL's business, and the investor contacted MERRILL to ask why the FBI was investigating MERRILL. MERRILL then contacted the FBI in an attempt to explain his business to the FBI. After his arrival at the Baltimore Field Office, MERRILL was advised by FBI agents prior to questioning that the interview was voluntary and he was free to leave at any time.

11.     In a more than two-hour interview, MERRILL stated that his company is GCR and that 85% to 95% of what he purchases is credit card debt from Chase Bank, Citibank, Wells Fargo, and other credit card originators. MERRILL also stated he has three or four "family offices," i.e., a group of investors who have their money managed by a financial advisor who brings the GCR investment opportunity to the investors. Each "office" has their own special purpose vehicle "SPV" to manage the purchase and sale of the debt portfolios. MERRILL currently outsources debt collections to DE VILLE, and the money from the debt collected by DE VILLE goes directly into the SPV. Regarding the "Family Office" accounts, MERRILL reiterated he does not touch the money. However, MERRILL did not name any of these SPVs, nor did he provide any verification information for the investors. When asked if he had ever lost money for his investors, MERRILL stated, "No way." MERRILL produced an Investor Agreement that showed GCR promised a 13% return to the investor. MERRILL reiterated that he had never lost money for an investor.

12.     Your affiant knows, based on a response to a subpoena issued by the Securities and Exchange Commission ("SEC") to Citibank, that after a search of Citibank databases going back as far as 2007, Citibank had no record of any sale of credit card debt to MERRILL, GCR, DELMARA, DE VILLE, or RPI.

13.     As part of the investigation, your affiant obtained and reviewed bank accounts for entities controlled by LEDFORD.  A preliminary financial analysis for the period January 1, 2015 to December 31, 2017 indicated that LEDFORD obtained approximately $159.7 million from investor/lenders.  Approximately $100.6 million was used to pay lenders/investors and $19.3 million was transferred to entities controlled by MERRILL. Approximately $22.7 million was spent on LEDFORD's personal expenses including credit cards, jewelry, cars and $17.9 million at casinos.  The analysis also indicated that of the total funds obtained by LEDFORD, only approximately $12.3 million was obtained from the actual collection of debt.

SCUSA

14.     On or about December 20, 2017 a Certificate of Formation was filed with the Secretary of State for the State of Texas for the formation for SCUSA with an address of 13155 Noel Road, Suite 900, Dallas, Texas. JEZIERSKI is listed as the Director of SCUSA on that document. Internet searches revealed that 13155 Noel Road, Suite 900, is a virtual office.  Your affiant knows, based on experience, that virtual offices operate differently from traditional offices by allowing companies to maintain a mailing address and have access to meeting and conference rooms without the overhead of per square foot rental

charges. Companies are charged a rental fee in exchange for the use of the office space when needed.

15.     Santander Credit USA, Inc. is a wholly-owned subsidiary of Santander Consumer USA Holdings, Inc., a vehicle finance company based in Dallas, Texas. Internet searches conducted by your affiant revealed that Santander Credit, USA is also referred to as "SCUSA." Your affiant believes that LEDFORD, MERRILL and JEZIERSKI established their company called SCUSA to make it appear to be Santander Credit USA, Inc., so investors and lenders would be led to believe that the initials "SCUSA" stand for Santander Credit USA, Inc.

16.     Your affiant has obtained financial records that show a bank account was established at J.P. Morgan Chase in the name of SCUSA ending in 9592 on December 23, 2017. The account opening documents show that JEZIERSKI is the sole signor and listed as President of SCUSA. A preliminary financial analysis of the SCUSA account ending in 9592 for the period December 26, 2017 through March 12, 2018, indicated that $23 million was received from MERRILL associated entities, sourced from investors. Of those funds, $19.9 million was transferred to LEDFORD controlled entities, including $12.2 million to DE VILLE and $5.2 million to RIVERWALK. A PNC account ending in 2822 for RHINO, for which MERRILL was the sole signor, received $1 million and GCR received $2 million.

17.     Your affiant reviewed records for DE VILLE that showed on December 29, 2017, nine days after SCUSA formation documents were filed with the state of Texas, $50,000 was wired from DE VILLE to CRJ's J.P. Morgan Chase bank account ending in 5363.

18.     Your affiant believes that SCUSA was created for the purpose of defrauding investors by making it appear that their investment funds were being sent to the legitimate company known as Santander Credit, USA.  In short, SCUSA operated as an impostor company to lure investors into believing that their money was well invested in accounts receivable.

NLEX

19.     Your affiant believes that another impostor company was created to facilitate the Ponzi scheme.  On or about January 18, 2018 a Certificate of Formation was filed with the Secretary of State for the state of Texas for the formation of NLEX with an address 4925 Diamond Trace Trail, Ft. Worth, Texas.  JEZIERSKI is listed as the Director of NLEX on that document.  Internet searches revealed that 4925 Diamond Trace Trail is a single family home in a residential neighborhood.  A search of the Tarrant County, Texas tax assessment database revealed that the 4925 Diamond Trace Trail property is a rental property owned by an individual unrelated to this investigation who resides in Shreveport, Louisiana. Database search results indicate that JEZIERSKI's address at the time was listed as 4925 Diamond Trace Trail, Fort, Worth, Texas, the same address as NLEX.

20.     Your affiant has learned through internet searches that National Loan Exchange, Inc. is a legitimate company headquartered in Edwardsville, Illinois that also

goes by the acronym NLEX. According to its website, National Loan Exchange, Inc. is a "leading broker of charged-off and nonperforming asset portfolios, and has been an important pioneer in the debt sale industry." Their website, www.nlex.com, states that beginning in 1993, "the company began representing portfolios on behalf of financial institutions to offer new products to its buyers, and to offer an exchange in which lenders could create liquidity for their charged off assets." The website also lists its management team, from the President to the various Vice Presidents, the General Counsel, Contract Administrator, and Chief Financial Officer. JEZIERSKI is not listed among the management team. Based on the above information, your affiant believes that NLEX was created to appear to be the legitimate company known as National Loan Exchange, Inc.

21. On January 17, 2018, at 7:38 AM, in an email obtained from the search warrant of LEDFORD's Riverwalk email address jledford@rwfincorp.com, showed that JEZIERSKI, using his cjezierski@rwfincorp.com email address, wrote the following to LEDFORD:

> "*As we open these companies I had an idea.*
>
> *Can I rent a virtual space that handles mail, phone number, etc. that we can use as the incorporation address on all of these companies?*
>
> *It will be cleaner, and we can use it to kind of divert away from ourselves.*
>
> *Closet one is Southlake and its $200 a month. They will handle phone, mail, we can use conference rooms/office space, lounges, corporate address etc.*
>
> *Sincerely,*
>
> *Cameron Jezierski*
>
> *Chief Operating Officer*

**[Glade Road]**
*Colleyville, Texas 76034*
*(817) 251-7000 ext. 1116*
*(817)739-8179 cell*

*cjezierski@rwfincorp.com"*

22.    On January 17, 2018, at 8:02 AM, LEDFORD responded to JEZIERSKI's

email, listed in paragraph 21 of this affidavit, using his jledford@rwfincorp.com email

address and wrote the following:

*"Yes good idea*

*Thanks,*

*JBL*

*Jay B. Ledford*

*Chief Executive Officer*

**[Glade Road]**
*Colleyville, Texas 76034*
*(817) 251-7000 ext. 1109*
*(817) 822-4562 cell*

*jledford@rwfincorp.com"*

23.    On January 17, 2018, at 10:20 AM, JEZIERSKI responded to LEDFORD's

email, listed in paragraph 22 of this affidavit, using his cjezierski@rwfincorp.com email

address and wrote the following:

*"Done.*

*Turns out its only $120 down and $80 a month or so.*

*I put under one of my companies to hold it.*

*950 E. State Highway 114, Suite 160*

*Southlake, Texas 76092*

*Sincerely,*

*Cameron Jezierski*

*Chief Operating Officer*

**[Glade Road]**
*Colleyville, Texas 76034*
*(817) 251-7000 ext. 1116*
*(817)739-8179 cell*

*cjezierski@rwfincorp.com "*

24. Your affiant has obtained financial records that show a bank account was established at J.P. Morgan Chase in the name of NLEX, Inc. ending in 8330 on January 22, 2018. The account opening documents show that JEZIERSKI is the sole signor on the account and is listed as the President. The business opening documents also show a business address of 950 E State HWY 114, Suite 160 (PMB1639), Southlake, TX 76092 which is the same virtual office space address provided in paragraph 23 of this affidavit from JEZIERSKI to LEDFORD. A preliminary financial analysis of the NLEX account ending in 8330 for the period January 22, 2018 through February 20, 2018, indicates that $10.7 million was received from MERRILL controlled entities on January 25, 2018, sourced from investors. Those funds were subsequently transferred to DE VILLE, $10.6 million on January 25, 2018 and $150,673 on February 20, 2018.

25. Your affiant reviewed records for DE VILLE that showed on January 26, 2018, eight days after NLEX formation documents were filed with the State of Texas, $30,000 was wired from DE VILLE to CRJ's J.P Morgan Chase bank account ending 5363.

Based on the foregoing chronology, your affiant believes that NLEX was used to defraud investors.

Undercover Operation

26.    On May 18, 2018 an FBI undercover operation ("UCO") was conducted at **Glade Road, Airport Freeway** and **Boulevard 26**. Over a period of four hours, the UCO made audio and video recordings of an undercover agent's meeting with LEDFORD, MERRILL, JEZIERSKI and others. The FBI undercover employee ("UCE 5156") posed as a potential investor and met with LEDFORD, MERRILL, JEZIERSKI and others. The operation began at **Glade Road**, then moved to **Airport Freeway** and **Boulevard 26**.

27.    At the onset of the meeting, JEZIERSKI gave UCE 5156 a packet of "DUE DILIGENCE DOCUMENTS" for the purchase of a "$396M Student Loan Portfolio." Included in the packet was a summary detailing the agenda for the meeting. The following was printed on the summary sheet;

"*AGENDA*

*1. Meet and greet at Colleyville Corporate offices* **[Glade Road]**

*2. Quick background of who we are and what we do.*

*3. Review GCR-DeVille library of due diligence information on conference TV monitor.*

*4. Questions and Answers.*

*5. Current student loan purchase opportunity presentation. See below.*"

28.    The purported face value of the portfolio was $396,011,223.09 with a total purchase price of $33,344,144.98. The due diligence documents included a "Portfolio

Detail Evaluation" summary, "DeVille StratX Score & Risk Allocation Summary" and other documents. The fraudulent documents are similar to those given to other LEDFORD investors. Your affiant knows that StratX is the proprietary software system allegedly used by LEDFORD, MERRILL, and JEZIERSKI to determine which portfolios deals they will purchase.

29.   During the recorded meeting, MERRILL and LEDFORD stated the following:

> Kevin Merrill: ...I, I think it's incredible to look at how it's transformed.
> But, to back up a little bit, we started doing our our things,
> buying together, selling together, using agencies, um and really
> built a business, learned it. Uh, we got a great track record. Jay
> turned around ultimately and said, "Hey, I think it's really
> time to build this thing from the ground up." Started
> the **DeVille call center** side of it, and brought in quality
> people to, to build it out and do it the right way. I think 109
> employees now...all in.

> Jay Ledford: Yeah. It's 109 [UI]. We'll take you down to the um **new call
> center**. We're we're expanding, we have – we'll keep the **same location**
> you'll see first, leading down the road to **a new location** which has 17,000 square
feet?

> Jay Ledford: The **call center** part has.. the **main call center's** got...

> Jay Ledford: Yeah. So we're scheduled to add another. We're gonna
> keep probably about 50 people at the, at the **current call
> center** and then add another 150 to...

> Kevin Merrill: The, the **call center** side of it really for us has become the
> the benchmark of this this stuff because in the deals that we've
> done over time, it's, it's – and this is something that if I
> was on your side, I'd, I'd feel really good about – is our skin's
> in the game. Our money's in the game... [emphasis in bold added]

30.   Your affiant knows that after the initial meeting and presentation at **Glade Road** (corporate offices), UCE 5156 was brought by MERRILL and LEDFORD in LEDFORD's personal car to **Airport Freeway and Boulevard 26** (collection centers), where UCE 5156 was given a further presentation about the debt collection business that MERRILL, LEDFORD and JEZIERSKI conducted. The first call center was located at **Airport** Freeway, then UCE 5156 was subsequently taken to **Boulevard 26**, which is a large call center.  While at **Boulevard 26,** MERRILL, LEDFORD, and JEZIERSKI continued to pitch the investment scheme to UCE 5156.

31.   Based on your affiant's training, knowledge, and belief, the documents provided to UCE 5156 and the collection centers tours were for the purposes of deceiving and defrauding a potential investor. Your affiant believes that within **Glade Road, Airport Freeway** and **Boulevard 26,** there are instrumentalities and evidence of the fraud scheme perpetrated by MERRILL, LEDFORD, and JEZIERSKI.

32.   As part of this investigation, your affiant obtained records of CENTURION CAPITAL CORPORATION, a corporation registered in the state of Texas, with Ledford & Associates, PLLC as the registered agent. The documents show that CENTURION was formed on May 2, 2017.    Your affiant also obtained bank account records from a Bank of America account ending in 9683 for CENTURION.  Account opening documents for that account showed that the account was opened on June 14, 2017, listed ███████████ as the Director of CENTURION, and the only authorized signer on that account.

33.   The analysis of CENTURION's Bank of America account ending in 9683 shows that since June 2017, the account controlled by ███████████ received $15.25

million in investor funds, that she wired approximately $14.3 million of those funds to entities controlled by LEDFORD, that she used investor or lender funds to pay other investors or lenders their principal or their purported returns, and that she used CENTURION to make it appear as though investors were being paid back profits on investments made through CENTURION. Based on your affiant's training and experience, this pattern of conduct is indicative of a Ponzi scheme.

The July 2017 Santander Deal

34.    On or about June 28, 2017, LEDFORD helped ▮▮▮▮▮▮▮▮ solicit new investment funds from a group of investors (the Colorado Group) that had previously invested in LEDFORD's investment scheme. On June 28, 2017, LEDFORD emailed ▮▮▮ ▮▮▮▮▮▮ at the ▮▮▮@ledfordpllc.com, at approximately 4:08PM, and stated "I will talk to you about this. let me know when ready. Thanks, JBL." The email subject line was "$63.4m Santander package." Attached to that email were three attachments titled "$63.4M Santander Auto Data File and Strat.xlsx," "$63.4M Santander Auto Loans – Asset Purchase Overview.docx," and "Acquisition of Debt Portfolio Agreement – Centurion.docx." Continuing on June 28, 2017, at approximately 5:44 PM, ▮▮▮▮▮▮▮▮ responded from the ▮▮▮@ledfordpllc.com stating *"Not sure if you wanted to see my changes. I didn't change much besides replacing DEVILLE info with CENTURION. See attached."* She attached the original documents, "$63.4M Santander Auto Data File and Strat.xlsx "$63.4M Santander Auto Loans – Asset Purchase Overview.docx," and "Acquisition of Debt Portfolio Agreement – Centurion.docx" with her changes. LEDFORD responded stating *"Looks good. We can send out tomorrow. Is that your logo?"* ▮▮▮▮▮▮▮

responded approximately 90 minutes later stating, "*I donno...? I guess? I made it real quick lol. Don't want to ask Gabe to make one for me.*"    Your affiant's review of those documents altered by ▮▮▮▮▮▮▮ show that she made changes including the following:

- Included wiring instructions for the CENTURION Bank of America account ending in 9683;

- Changed heading to read "CENTURION CAPITAL CORPORATION rather than DE VILLE ASSET MANAGEMENT; and,

- Changed "Company Information" to information about CENTURION, not about DE VILLE.

35.    On June 29, 2017, the following day, ▮▮▮▮▮▮▮ used the ▮▮▮@ledfordpllc.com to email three investors based in Boulder, Colorado ("The Colorado Group") with the subject line "$63.4M Santander Auto Package." Your affiant knows that the Colorado Group had already invested in accounts receivable offered by LEDFORD. In the body of that email, she stated the following:

*"(The Colorado Group)"*

*It was a pleasure to get to know you while you three were here in Dallas. I hope to see you again soon."*

*"Since your visit, I have secured the proper bonding for CENTURION and am finally ready to get into action. I'd like to present you the opportunity to participate with me (CENTURION Capital) on the purchase and subsequent sale of $63.4M Santander Auto accounts."*

*"Attached you will find the following:*

        *1.  Asset Purchase Overview and Evaluation*

### 2. Data File and Strat

*I have presented the above much like the format used by DEVILLE. I also plan on using the same agreement template you use with DEVILLE.*

*Please review and let me know the participation interests and I will prepare documents to support the transactions between CENTURION and the entities participating. If you'd like to chat, my phone number is 682-561-6227.*

*Best,*



*, CPA*
*@ledfordpllc.com"*

Attached to that email were two attachments titled "$63.4M Santander Auto Data File and Strat.xlsx" and "$63.4M Santander Auto Loans – Asset Purchase Overview.docx." Your affiant reviewed the Asset Purchase Overview, which was on CENTURION letterhead. In the "Opportunity" section, it stated that the investment opportunity with CENTURION was for the purchase of "*The Consumer Auto Loans Package [which] is a nationwide file with 7,979 accounts for a face value of $63,478,521.97. The portfolio can be purchased for 7.20% and sold for 8.75[%] within 90 days.*" The document goes on to state that the portfolio will be purchased for $4,570,453.58, and $5,554,370.67 can be recovered in 90 days for a Return on Investment of 21.53%. The deal proposed by ▇▇▇▇▇▇▇ was not for collections, rather, she proposed to the Colorado Group (investors) that CENTURION would purchase the debt portfolio from Santander for $4,570,453.58 and then turn around within 90 days and sell the portfolio for $5,554,370.67.

36.     On June 29, 2017, that same day, a member of the Colorado Group responded to ▇▇▇▇▇▇▇ at the ▇▇ @ledfordpllc.com, and copied other members of the

Colorado Group. ▮▮▮▮▮▮▮ forwarded the email to LEDFORD, which reads as follows:

> "Good evening ▮▮▮▮ ,
>
> Thank you for the detail on this initial pool.
> Our plan had been to participate for approximately half of the purchase price, or approximately $2.25 million.
>
> Let's plan on participation across our entities as following:
>
> - (Colorado Group Entity #1) $1,500,000
>
> - (Colorado Group Entity #2) $250,000
>
> - (Colorado Group Entity #3) $500,000

Based on this email exchange, the Colorado Group's share of the $63.4M Santander Auto accounts receivable was to be $2.25 million. The purchase was to be done through Centurion, ▮▮▮▮▮▮'s company. The email goes on to state:

> "Congratulations on getting your business up and running. We look forward to partnering with you."

37.    Your affiant reviewed records obtained from CENTURION's Bank of America account ending in 9683 for the time period June 14, 2017 to July 31, 2017. That review showed that the account was opened on June 14, 2017 with a transfer of $100 from ▮▮▮▮▮▮▮'s personal bank account, which was only weeks before the Colorado Group purchase. On June 26, 2017, a "Mobile/Email" transfer, from ▮▮▮▮▮▮▮'s personal bank account of $1,000 was credited. The CENTURION account ended the month of June 2017 with a balance of $1,000 after a $100 check card purchase at suretybonds.com. The address listed for CENTURION on the account statement was 1132

Glade Road, Colleyville, Texas, the same address for RIVERWALK.

38.     On July 1, 2017, the balance on CENTURION's Bank of America account
ending in 9683 was $1,000. On July 5, 2017, CENTURION's account received three wires
from the Colorado Group totaling $2.25 million of which your affiant believes, based on
email communication obtained in this investigation, was intended for the purchase of the
$63.4M Santander Auto consumer debt portfolio. On July 7, 2017, a wire was sent from
CENTURION's Bank of America account ending in 9683 for $2,104,795.37 to a Wells
Fargo account ending in 4647 in the name of RPI (her father's account), for which the sole
signatory is LEDFORD. Besides wire transfer fees, the $2,104,795.37 wire was the only
debit on the CENTURION Bank of America account ending in 9683 for that month.

39.     On July 6, 2017, the beginning balance in RPI's Wells Fargo account ending
in 4647 was $169,595.15. On July 7, 2017, the wire from CENTURION's account ending
in 9683 of $2,104,795.37 was credited. On the same day, LEDFORD or someone operating
at his direction caused three transfers to LEDFORD's personal bank account at Wells Fargo
account ending in 9516, totaling $2,092,190.25. At this stage of the tracing process, the
financial records reflect that the promised accounts receivable portfolio had still not been
purchased with the funds provided by the Colorado Group. Instead, the funds were
laundered through bank accounts unassociated with the Centurion deal.

40.     On July 6, 2017, the balance in LEDFORD's personal bank account at Wells
Fargo ending in 9516 was $577,897.30 and the $2,092,190.25 credits described in the
above paragraph increased the balance to over $2.6 million. On July 10, 2017, funds from
the 9516 account were used to purchase an official bank check of $2,500,000 made payable

to LEDFORD (and not for the purchase of accounts receivable). On July 24, 2017, a transfer of $165,000 to LEDFORD's personal bank account at Wells Fargo ending in 4990 was debited from account 9516. Between July 31, 2017 and August 1, 2017, miscellaneous deposits of $312.41 were credited. The same $2,500,000 official check was deposited on August 7, 2017 into LEDFORD's personal bank account ending in 9516. On August 8, 2017, three transfers totaling $2,500,000 were debited from account 9516 to RPI's Wells Fargo account ending in 4647, leaving a final balance in LEDFORD's personal bank account ending in 9516 of $5,399.96. None of the three debits were traced to the purchase of accounts receivable; rather, they constituted another stage in the laundering process.

41.    On August 7, 2017, the account balance in RPI's Wells Fargo account ending in 4647 was $2,160.27. On August 8, 2017, after the three transfers from LEDFORD's personal bank account ending in 9516 were credited, the balance was in excess of $2.5 million. On August 9, 2017, a wire in the amount of $2,498,014.67 was sent to DE VILLE's Bank of America account ending in 2472. LEDFORD is the sole signor on DE VILLE's Bank of America account ending in 2472. At this stage in the laundering process, the financial records reflect that the portfolio of accounts still had not been purchased with the investors' funds.

42.    On August 8, 2017, the account balance for DE VILLE's Bank of America account ending in 2472 was $2,256.07. On August 9, 2017, the wire from RPI's Wells Fargo account ending in 4647 of $2,498,014.67 was credited. Also on August 9, 2017, a transfer of $2,200,000 from RIVERWALK's Bank of America account ending in 8958 and a transfer of $500,000 from RIVERWALK's Bank of America account ending in 8932

were credited.   LEDFORD is the sole signor on RIVERWALK's Bank of America accounts ending in 8932 and 8958.

43.     As set forth below, further tracking of the Colorado Group funds revealed that, not only were their funds not used to buy a share of the $63.4M Santander Auto portfolio, your affiant determined that the funds were used to make profit payments to the same Colorado Group investors for prior investments they made in LEDFORD's accounts receivable portfolio.  On August 9, 2017, three wires totaling $1,940,605 were sent from DE VILLE's Bank of America account ending in 2472 to members of the Colorado Group. On August 10, 2017, a wire from DE VILLE's Bank of America account ending in 2472 of $3,127,050 was sent to members of the Colorado Group.  An email from LEDFORD to the Colorado Group stated that the August 9th and 10th wire transfers represented the profits on previous deals the Colorado Group had made with DE VILLE.  Based upon your affiant's analysis of the DE VILLE account and the other foregoing accounts discussed above, your affiant has concluded that the wire transfers back to the Colorado Group were funded in whole or in part by investors' monies and not by profits, which is a typical pattern in an ongoing Ponzi scheme.

44.     In an email dated May 15, 2018, an employee at Fidere Capital emailed █████ ████████.  The subject of the email was "centurion texas franchise tax extension successful." Attached to the email was a PDF file titled "Franchise Tax – You Have Successfully.pdf." The attachment was a confirmation that "CENTURION CAPITAL CORPORATION" had successfully filed a 2018 Annual Extension Request for Franchise Tax for the state of Texas.  The confirmation lists the Taxpayer name as: CENTURION

CAPITAL CORPORATION and Taxpayer Address: **[Paramount Boulevard]** the address of LEDFORD's accounting firm. Based this information, your affiant believes ███ ███'s company, CENTURION CAPITAL CORPORATION, operates from **Paramount Boulevard.**

45.     Your affiant has determined that another entity associated with LEDFORD's fraudulent scheme, J-TRUST, is located at **Paramount Boulevard**. Records reflect that J-TRUST was established in the state of Texas and LEDFORD listed as the trustor. Records show that J-TRUST was formed on March 31, 2012 and it opened a bank account at JP Morgan Chase ending in 4188. The bank opening documents list J-TRUST's address to be **Paramount Boulevard**. A review of J-TRUST's bank account revealed that investor funds associated with the scheme to defraud deposited into that bank account were used by LEDFORD to purchase personal property in Las Vegas, Nevada, which is titled in the name of J-TRUST.

46.     Based on your affiant's training, knowledge and belief, evidence of LEDFORD's use of multiple entities and bank accounts to facilitate, promote and conceal the Ponzi scheme, including CENTURION and J-TRUST, is located at **Paramount Boulevard**.

## SURVEILLANCE OF SUBJECT LOCATIONS

47.     In a forwarded email, dated September 5, 2017, in which MERRILL is cc'd an investors asks: *"Finally, so I can make plans for a hotel, etc. can you let me know the address of the two offices?"*

48.     On September 18, 2017 LEDFORD, using his jledford@rwfincorp.com email address, responds to the investor's point of contact as well as MERRILL who is cc'd at his kevin@gcrinvest.com email address. LEDFORD responds:

"*The corporate offices are in Colleyville.*

*Collections/Call Center is at* **[Airport Fairway]**

*Thanks,*
*JBL*

*Jay B. Ledford*
*Chief Executive Officer*

**[Glade Road]**
*Colleyville, Texas 76034*
*(817) 251-7000 ext. 1109*
*(817) 822-4562 cell*
*jledford@rwfincorp.com*"

49.     On August 24, 2018, FBI agents performed surveillance at **Boulevard 26**. FBI agents observed a Black Bentley bearing Texas license plate GH40FC in and around **Boulevard 26.** Your affiant knows through NCIC records that the Black Bentley is leased and operated by LEDFORD.

50.     On August 24, 2018, FBI agents performed surveillance at **Boulevard 26**. FBI agents observed a dark gray Chevy Silverado bearing Texas license plate KNL 5978 parked in a reserved space on the north side **Boulevard 26**. Your affiant knows through NCIC records that the Chevy Silverado is registered to JEZIERSKI.

51.     On August 24, 2018, and FBI agent performed surveillance at **Glade Road.** The FBI agent observed a black Audi bearing Texas license plate FWR 9183 in and around

**Glade Road**. Your affiant knows through NCIC records that the black Audi is registered

to ███████████.

52.     On September 7, 2018, an FBI agent performed surveillance at **Paramount**

**Boulevard** and took photos of the building. The photos show a sign in front of **Paramount**

**Boulevard** that reads "JAY B. LEDFORD, A PROFESSIONAL CORPORATION,

CERTIFIED PUBLIC ACCOUNTANTS." Writing on the side of building states "JAY B.

LEDFORD and JAY B. LEDFORD, C.P.A."

## ELECTRONIC COMMUNICATIONS IN FINANCIAL INVESTIGATIONS AND THE RETENTION OF ITEMS CONCERNING THESE TYPES OF OFFENSES

53.     Based on your affiant's training, knowledge and experience in conducting

financial fraud investigations, your affiant knows that individuals and companies that

commit criminal violations of federal fraud statutes often use electronic means to send

information that may constitute evidence of such fraud. For example, emails and other

electronic communications associated with individuals and companies involved in

financial fraud often contain details relevant to their fraudulent activities, including as

applied to the facts of this case, information and evidence concerning unreported income,

unknown bank accounts, assets acquired, fund transfers conducted, and nominee accounts

in use and other financial information.

54.     Based on your affiant's knowledge and experience, as well as the knowledge

and experience of other agents with whom your affiant works, your affiant submits that

individuals who engage in the types of crimes under investigation are likely to have

documents and electronic data (on computers, mobile devices, and other data storage items)

within their residences that constitute evidence, fruits and instrumentalities of the crimes under investigation. For example, in the course of the acts described in this Affidavit and the exhibits thereto, your affiant submits that it is highly likely that LEDFORD received electronic messages that may be found on electronic media within the Subject Locations. Your affiant has already obtained a search warrant for LEDFORD's online Google account, which confirmed that he uses emails to facilitate his fraudulent scheme. Based upon the extensive evidence of LEDFORD's involvement in the crimes being investigated and the use of electronic media in furtherance of those crimes, there is probable cause to believe that the Subject Locations may contain electronic data relating to the crimes under investigation.

## CONCLUSION

55.     Based on the foregoing facts, I request that the Court issue the search warrant for the Subject Locations, which are further described in Attachment A, authorizing the seizure of the evidence, fruits, and instrumentalities set forth with more particularity in Attachment B, related to conspiracy to commit wire fraud (18 U.S.C. §1349), wire fraud (18 U.S.C. § 1343), identity theft (18 U.S.C. §1028A) and conspiracy to commit money laundering (18 U.S.C. § 1956(h)).

## REQUEST FOR SEALING

56.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Your affiant is not aware that

Affidavit in Support of an Application for a Search Warrant - Page 28 of 29

LEDFORD knows about your affiant's investigation. Your affiant is concerned that if LEDFORD learned about the ongoing investigation, about the application for a search warrant, or especially the facts in this affidavit, LEDFORD could attempt to destroy relevant evidence. Your affiant is also concerned that premature disclosure of the existence of this search warrant application could endanger the safety of law enforcement personnel attempting to execute the warrant.

Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation and/or the safety of law enforcement officers.

Respectfully submitted,

Special Agent Loi H. Cao
Federal Bureau of Investigation

Sworn to and subscribed before me on this 17th day of September, 2018 at 10:05 a.m/p.m in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

## Attachment A

<u>1132 Glade Road, Colleyville, Texas:</u>  **Subject Location 1** is a stand-alone building that sits at the corner of W. Glade Road and Riverwalk Drive in Colleyville, Texas. It has a stone façade that is light-brown in color with wood trim and has a dark colored roof. The entrance is on the corner of the building and faces out towards W. Glade Road. There is a sign outside the building that says "RIVERWALK FINANCIAL CORPORATION." The back of **Subject Location 1** has a gated, covered car port. To one side of **Subject Location 1** is a strip mall with businesses, and to another side is a residential neighborhood.



<u>1601 Airport Freeway, Euless, Texas</u>: **Subject Location 2** is a stand-alone building that sits at the corner of Wilshire Drive and Airport Freeway in Euless, Texas.   The building has two levels and sits raised above an open-air parking lot.  It has a light-colored exterior and glass windows on the two levels that contain office space.  There is a sign on the side of the building facing Airport Freeway that says "RIVERWALK FINANCIAL CORPORATION."  On that same side are large numbers "1601."  The entrance to the building is a glass door with the words "RIVERWALK FINANCIAL CORPORATION, 2nd floor, RIVERWALK DEBT SOLUTIIONS, INC., RIVERWALK CREDIT SOLUTIONS INC. and DEVILLE ASST MANAGEMENT, LTD" written on it in white letters.



<u>9151 Boulevard 26, North Richland Hills, Texas</u>: **Subject Location 3** is an office building with a mostly glass exterior.  Outside the building is a gray colored sign that says "CORPORATE CENTER 9151."  Contained in the building are suites 100B, 101B, 150B and 175B the entrances to each are depicted below. Each suite has a name plate that lists the suite number and the corresponding company.



## Suite 100B is DeVille Asset Management, LTD.



## Suite 101B is Riverwalk/Deville Breakroom



## Suite 150B is Riverwalk/Deville Training




## Suite 175B is Riverwalk Financial Solutions

 

<u>2801 Paramount Boulevard, Amarillo, Texas</u>: **Subject Location 4** is a one level, stand-alone building on Paramount Boulevard between W. 28th Ave. and SW 28th Ave in Amarillo, Texas. The building has a brick façade, with a dark colored roof. On the building is a light colored sign stating "Jay B. Ledford, A Professional Corporation." Underneath that the sign states "Jay B. Ledford, C.P.A" and "Hillary R. Badrow, C.P.A" There is a light-colored sign outside bookended with brick posts stating "Jay. B. Ledford, A Professional Corporation, Certified Public Accountants." The numbers "2801" are on that sign outside the building. There is a parking lot to the rear of the building.

